IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| RONALD ALAN KLOHS and DONNA LEE MCGARRITY, <br><br> Plaintiffs, <br><br> vs. <br><br> WELLS FARGO BANK, N.A., <br><br> Defendant. <br> _____ | ) CIVIL NO. 12-00274 JMS-RLP <br> ) <br> ) ORDER GRANTING DEFENDANT <br> ) WELLS FARGO BANK, N.A.'S <br> ) MOTION TO DISMISS <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## ORDER GRANTING DEFENDANT WELLS FARGO BANK, N.A.'S MOTION TO DISMISS

## I. INTRODUCTION

This action arises from a March 19, 2009 mortgage transaction in which Plaintiffs Ronald Alan Klohs and Donna Lee McGarrity ("Plaintiffs") borrowed $450,000 from Defendant Well Fargo Bank, N.A., ("Wells Fargo"), secured by a promissory note and mortgage on real property located at 340 Ilimano Street, Kailua, Hawaii 96734 (the "subject property"). After the transaction closed, Wells Fargo allegedly sold the Note and Mortgage to the Federal Home Loan Mortgage Corporation ("Freddie Mac"), which in turn transferred the Note and Mortgage to a Freddie Mac Mortgage Participation Certificates Trust (the "2009 Freddie Mac Trust"). Wells Fargo, however, retained the servicing rights, and has

acted as loan servicer since that sale and transfer.  The Complaint alleges that, at

some unspecified time later, the 2009 Freddie Mac Trust was terminated, and that

therefore Wells Fargo's servicing rights also terminated.  Because Wells Fargo has

continued to service the loan, Plaintiffs claim Wells Fargo violated the Fair Debt

Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*; committed fraud;

and violated other state laws.

Before the court is Wells Fargo's Motion to Dismiss.  Based on the

following, the court concludes that the Complaint fails to state a claim upon which

relief can be granted and GRANTS the Motion, with leave to amend as to certain

Counts.

## II. <u>BACKGROUND</u>

### A.    **Factual Background**

On March 19, 2009, Plaintiffs borrowed $450,000 from Wells Fargo,

secured by a Mortgage on the subject property.  Doc. No. 1, Compl. ¶ 1; Doc. No.

1-1, Compl. Ex. A.  The Mortgage identifies Wells Fargo as the lender.  Doc. No.

1-1, Compl. Ex. B.[1]  Among other provisions, the Mortgage notified Plaintiffs that

"[t]he Note or a partial interest in the Note (together with this Security Instrument)

_____

[1]  The Note and Mortgage, attached as Exhibits, may be considered to be part of the
Complaint for present purposes.  *See, e.g.*, *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.
2003) ("Certain written instruments attached to pleadings may be considered part of the
pleading.") (citing Fed. R. Civ. P. 10(c)).

2

can be sold one or more times without prior notice to Borrower." *Id.* at 14, ¶ 20.

The Note indicates that the borrowers "will pay principal and interest by making a

payment every month . . . beginning on May 1, 2009." Doc. No. 1-1, Compl. Ex.

A at 2. The maturity date of the Note is April 1, 2039, and the Note provides that

borrowers "will make [their] monthly payments at Wells Fargo Bank, N.A., P.O.

Box 11701, Newark, NJ 07101-4701 or at a different place if required by the Note

Holder." *Id.*

According to the Complaint, immediately after Plaintiffs signed the

Note and Mortgage, Wells Fargo sold them both to Freddie Mac. Doc. No. 1,

Compl. ¶ 14. Thereafter, "Freddie Mac, as is its established business practice,

securitized the Note and the Mortgage by transferring them to a 'Freddie Mac

Mortgage Participation Certificates' trust . . . , a mortgage-backed-security pool of

mortgages." *Id.* Wells Fargo, however, retained the servicing rights. *Id.*

"[D]uring the existence of the Freddie Mac 2009 Trust, Freddie Mac (as trustee for

the trust) owned the Note and the Mortgage." *Id.*

Plaintiffs further allege that "upon information and belief, the Freddie

Mac 2009 Trust was later terminated [and] [w]hen the Freddie Mac 2009 Trust was

terminated, Wells Fargo's servicing rights to the Note and the Mortgage terminated

as well." *Id.* ¶ 14. There are no facts pled as to the meaning or timing of the

"termination" of the Trust, *e.g.*, whether or when it expired, merged, was purchased, or simply dissolved by its own terms. But Plaintiffs allege that "[a]s of May 16, 2012, there is no recorded or other evidence that the Freddie Mac 2009 Trust ever sold the Note or the Mortgage to any other entity, including but not limited to Wells Fargo." *Id.* ¶ 18. As a result,

> Once the Freddie Mac 2009 Trust was terminated, Wells Fargo, and any and all of its subsidiaries, parents, or successors, lost authority to act under the Freddie Mac 2009 Trust, and under the Note or the Mortgage. This would include acts such as collecting mortgage payments, assigning Notes or Mortgages, and deciding to foreclose.

*Id.* ¶ 16. Despite allegedly "having lost authority to act under the Freddie Mac 2009 Trust," Wells Fargo continued to act as the loan servicer:

> Since the Freddie Mac 2009 Trust was terminated and dissolved, Defendant Wells Fargo -- without having any interest in the Note or the Mortgage, without having purchased either the Note or the Mortgage, without any servicing rights, and without privity of contract with the mortgage [--] has held itself out as servicer of the Note and the Mortgage and without authority has sent wrongful bills to [Plaintiffs]. Relying on Wells Fargo's false representations, [Plaintiffs] paid many wrongful mortgage bills.

*Id.* ¶ 17. The Complaint does not allege that the loan is in default, nor that any foreclosure proceeding are ongoing or threatened.

**B.   Procedural Background**

On May 18, 2012, Plaintiffs initiated this action, asserting seven causes of action in their Complaint's five counts: (1) Violation of the FDCPA; (2) Quiet Title; (3) Fraud, Attempted Conversion, and Unjust Enrichment; (4) Violation of Hawaii Unfair Competition and Practices Statute -- Hawaii Revised Statutes ("HRS") § 480-2; and (5) Violation of Hawaii Collection Agencies Statute -- HRS § 443B.  Federal subject-matter jurisdiction is based both on 28 U.S.C. § 1331 (federal question -- the FDCPA) and on 28 U.S.C. § 1332 (diversity of citizenship).

In lieu of an Answer, Wells Fargo filed its Motion to Dismiss on July 16, 2012.  Doc. No. 9.  Plaintiffs filed their Opposition on September 10, 2012, Doc. No. 18, and Wells Fargo filed its Reply on September 17, 2012.  Doc. No. 20. The court heard the Motion on October 1, 2012.

## III.  <u>STANDARD OF REVIEW</u>

Federal Rule of Civil Procedure 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)); *see also Weber v. Dep't of Veterans Affairs*, 521 F.3d 1061, 1065 (9th Cir. 2008).  This tenet -- that the court must accept as true all of the allegations contained in the complaint -- "is inapplicable to legal conclusions."  *Iqbal*, 556 U.S. at 678.  Accordingly, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555); *see also Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) ("[A]llegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively.").

Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).  In other words, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Starr*, 652 F.3d at 1216.  Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief as required by Rule 8.  *Iqbal*, 556 U.S. at 679.

# IV. **DISCUSSION**

Although the Complaint alleges five Counts, each cause of action ultimately rests upon the proposition that the alleged "termination" of the 2009 Freddie Mac Trust necessarily also terminated the servicing rights and responsibilities of Wells Fargo. The court addresses that proposition when analyzing whether the Complaint states a valid claim for violations of the FDCPA, and then addresses the remaining Counts of the Complaint.

## A. **Violations of the FDCPA (Count I)**

Count One alleges that "Defendant Wells Fargo's actions violate the [FDCPA], 15 U.S.C. §§ 1692, et seq." Doc. No. 1, Compl. ¶ 20. Although the Complaint does not specify which provision of the FDCPA that Wells Fargo violated, the FDCPA generally prohibits "debt collectors" from making false or misleading representations and from engaging in various abusive and unfair practices in collecting debts. *See, e.g.*, *Heintz v. Jenkins*, 514 U.S. 291, 292 (1995). Thus, to be liable for violating the FDCPA a defendant must be a "debt collector" within the meaning of the statute. *Id.* at 294. Treating the well-pleaded factual allegations of the Complaint as true, Wells Fargo does not meet this definition. Count One thus does not state a claim.

### 1.    Wells Fargo Was Not a "Debt Collector" as a Loan Servicer

The FDCPA defines a "debt collector" as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).  Interpreting that definition, courts have consistently held that the FDCPA does not apply to, among others, mortgage servicing companies, or assignees of the mortgage debt, if the debt was not in default at the time the debt was obtained.  *See Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985) ("The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."); *see also, e.g.*, *Bailey v. Sec. Nat'l Servicing Corp.*, 154 F.3d 384, 387 (7th Cir. 1998) ("The plain language of § 1692a(6)(F) tells us that an individual is not a 'debt collector' subject to the [FDCPA] if the debt he seeks to collect was not in default at the time he purchased (or otherwise obtained) it."); *Soriano v. Wells Fargo Bank, N.A.*, 2012 WL 1536065, at *8 (D. Haw. Apr. 30, 2012) ("[The] Wells Fargo Defendants are not 'debt collectors' under the FDCPA if they were loan servicers that were servicing

8

the loans before they went into default and thereafter sought to collect the debt.");

*Fed. Nat'l Mortg. Ass'n v. Kamakau*, 2012 WL 622169, at *8 (D. Haw. Feb. 23, 2012) (reiterating that "original lenders, creditors, mortgage servicing companies, and mortgage brokers generally do not qualify as 'debt collectors' [under the FDCPA]") (citing cases); *Wende v. Countrywide Home Loans, Inc.*, 2012 WL 642879, at *4 (S.D. Cal. Feb. 28, 2012) (concluding that "a loan servicer is not a debt collector if it acquired the loan before the borrower was in default"); *Lettenmaier v. Fed. Home Loan Mortg. Corp.*, 2011 WL 3476648, at *14 (D. Or. Aug. 8, 2011) (explaining that "mortgage servicers are not debt collectors only when the underlying loan is taken for servicing *before* the default") (citation omitted).

Here, Plaintiffs do not dispute (and their Complaint alleges) that Wells Fargo was the loan servicer when they entered into the loan transaction, and that it retained servicing rights when it transferred the Note and Mortgage to Freddie Mac.  Doc. No. 1, Compl. ¶ 14.  Moreover, nothing in the Complaint alleges that the loan is in default, much less was in default when Wells Fargo obtained servicing rights.  Thus, given the clear weight of authority, Wells Fargo is not (or was not) a "debt collector" within the meaning of the FDCPA.  *See, e.g.*, *Au v. Republic State Mortg. Co.*, 2012 WL 3113147, at *13 (D. Haw. July 31,

2012) (dismissing FDCPA claim where "Wells Fargo was not collecting debts of another, and the [complaint does] not allege that the Mortgage debt is in default, much less that the Mortgage was in default when it was assigned to Wells Fargo"); *Perry*, 756 F.2d at 1208; *Soriano*, 2012 WL 1536065, at *8.

> ## 2. "Termination" of the 2009 Freddie Mac Trust Could Not Have Transformed Wells Fargo into a "Debt Collector"

The Complaint implies that Wells Fargo is no longer a loan servicer, and is *now* a debt collector. It alleges that "[w]ithin the last year, Defendant Wells Fargo acted as a debt collector, not as a creditor, under the FDCPA because it used instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of debts owed to another." Doc. No. 1, Compl. ¶ 21. But merely alleging such a conclusion, without plausible factual allegations to support it, is insufficient. *See, e.g.*, *Foth v. BAC Home Loans Servicing, LP*, 2011 WL 3439134, at *7 (D. Haw. Aug. 4, 2011) ("Plaintiffs' conclusory and confused Complaint does not sufficiently allege facts suggesting that Defendants are 'debt collectors' as contemplated by the FDCPA."); *Tedder v. Deutsche Bank Nat'l Trust Co.*, --- F. Supp. 2d ----, 2012 WL 1028125, at *12 (D. Haw. Mar. 23, 2012) (dismissing FDCPA claim because "Plaintiff has not sufficiently identified a debt currently under collection").

Plaintiffs' theory is that Wells Fargo lost its status as a loan servicer

when the 2009 Freddie Mac Trust terminated.  At that point, they argue, Wells

Fargo was no longer a servicer but began acting as a "debt collector" and thus

violated unspecified provisions of the FDCPA by acting "in the nature of a bounty

hunter" when it continued to service their loan.  Doc. No. 18, Pls.' Opp'n at 6.

They argue that their "Complaint clearly alleges that Wells Fargo is owed nothing,

and is no longer the authorized servicer because the Trust holding the Note and

Mortgage [was] dissolved, rendering its 'servicing rights' void." *Id.* at 5.

In this count, Plaintiffs do not allege or argue that a *different* loan

servicing company -- instead of Wells Fargo -- was, or should have been, servicing

their loan.  They do not argue that they were billed twice for the same loan

payment obligation, or that Wells Fargo failed to credit their payments.  Rather,

their theory appears to be that, when the 2009 Freddie Mac Trust terminated, their

loan obligations also terminated because the Note and Mortgage were not sold or

transferred to another entity.  *See, e.g.*, Doc. No. 1, Compl. ¶ 17("[Plaintiffs] paid

many wrongful mortgage bills."), ¶ 25 ("Wells Fargo has used false, deceptive, and

misleading representations to [Plaintiffs] in connection with the collection of an

alleged debt.").  Therefore, the Complaint alleges, Wells Fargo fraudulently

represented that it was the loan servicer, "falsely represented that [it] had standing

and authority to foreclose the Mortgage," *id.* ¶ 24, and "falsely represented to

[Plaintiffs] that nonpayment of the alleged debt will result in a sale of the Subject Property." *Id.* ¶ 27. They argue that these allegations must be taken as true for purposes of deciding this motion to dismiss.

But, despite the Complaint's allegations, Plaintiffs offer no authority for the legal conclusion that a "termination" of a trust comprising a securitized pool of mortgages necessarily ends the mortgages and loan obligations that comprise that trust.[2] Rather, securitization or transferring of Plaintiffs' Mortgage and/or Note did not modify the terms of the underlying loan obligation -- "the mortgage expressly provides that it can be sold without notice, [Doc. No. 1-1, Compl. Ex. B at 14, ¶ 20], and the transferee simply obtained the same rights that the transferor had under the mortgage." *Sarmiento v. Bank of N.Y. Mellon*, 2011

---

[2] During the October 1, 2012 hearing, Plaintiffs' counsel argued that when the 2009 Freddie Mac Trust terminated, all contractual rights associated with the Trust also terminated. But counsel also stated that "someone holds the Note," appearing to retreat from a theory that Plaintiffs' loan obligations ended when the Trust terminated. These types of arguments exemplify the reason why the Complaint fails to state a plausible claim -- it fails to allege facts that are critical to their theory, such as to identity which Trust is at issue, when it was terminated, and what its specific terms were (especially as to servicing rights). Here, it is insufficient merely to plead "upon information and belief" that termination of the 2009 Freddie Mac Trust also terminated Wells Fargo's servicing rights. *See, e.g.*, *Solis v. City of Fresno*, 2012 WL 868681, at *8 (E.D. Cal. Mar. 13, 2012) ("In the post-*Twombly* and *Iqbal* era, pleading on information and belief, *without more*, is insufficient to survive a motion to dismiss for failure to state a claim.") (citing *Twombly*, 550 U.S. at 570) (emphasis added). That is, although allegations "upon information and belief" may state a claim after *Iqbal* and *Twombly*, a claim must still be based on factual content that makes liability plausible, and not be "formulaic recitations of the elements of a cause of action." *Long v. Yomes*, 2011 WL 4412847, at *4 (D. Haw. Sept. 20, 2011) (quoting *Twombly*, 550 U.S. at 555) (editorial mark omitted).

WL 884457, at *7 (D. Haw. Mar. 10, 2011) (citing HRS § 490:3-203(b)).

Securitization does not alter the relationship or rights of the parties to the loan, but

"merely creates a 'separate contract, distinct from [p]laintiffs['] debt obligations'

under the note and does not change the relationship of the parties in any way[.]"

*Reyes v. GMAC Mortg. LLC*, 2011 WL 1322775, at *3 (D. Nev. Apr. 5, 2011)

(quoting *Commonwealth Prop. Advocates, LLC v. First Horizon Home Loan

Corp.*, 2010 WL 4788209, at *4 (D. Utah Nov. 16, 2010)).

   Plaintiffs' theory, then, is simply a variation of the discredited belief

that securitization of a mortgage renders the underlying note unenforceable.  *See,

e.g.*, *Pagano v. OneWest Bank, F.S.B.*, 2012 WL 74034, at *5 n.6 (D. Haw. Jan. 10,

2012) ("Courts have rejected theories that securitization alters the relationship or

rights of the original parties.") (citing cases); *Rodenhurst v. Bank of Am.*, 773 F.

Supp. 2d 886, 898 (D. Haw. 2011) ("[C]ourts have uniformly rejected the

argument that securitization of a mortgage loan provides the mortgagor a cause of

action.") (citing cases).  If securitization by using a pooling and servicing

agreement ("PSA") does not modify the terms of the underlying obligations, then

termination of a PSA also does not modify the terms.  Plaintiffs' theory that

termination of the 2009 Freddie Mac Trust terminated the ability of Wells Fargo to

service their loan is thus an implausible legal conclusion, which the court need not

accept at face value -- only "well pleaded" factual allegations are assumed true.

*See, e.g.*, *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010)

("After eliminating . . . unsupported legal conclusions, we identify 'well-pleaded

factual allegations,' which we assume to be true, 'and then determine whether they

plausibly give rise to an entitlement to relief.'") (quoting *Iqbal*, 556 U.S. at 679).[3]

Under the Note's terms, Plaintiffs agreed to "pay principal and interest

by making a payment every month . . . beginning on May 1, 2009," Doc. No. 1-1,

Compl. Ex. A at 2, until the Note's maturity on April 1, 2039.  *Id.*  Plaintiffs agreed

to "make [their] monthly payments at Wells Fargo Bank, N.A., P.O. Box 11701,

Newark, NJ 07101-4701 or at a different place if required by the Note Holder."  *Id.*

Nothing in the Complaint alleges that those loan payment obligations have ended.

Even assuming the 2009 Freddie Mac Trust was terminated, securitization does not

affect Plaintiffs' payment obligations.  *See, e.g.*, *Upperman v. Deutsche Bank Nat'l

Trust Co.*, 2010 WL 1610414, at *3 (E.D. Va. Apr. 16, 2010) (reasoning that

"[t]here is no authority . . . that the mere existence of a pooling and servicing

---

[3] At best, Plaintiffs' theory could be construed as arguing that Wells Fargo is violating the terms of a PSA by continuing to service the loan obligations after the PSA had ended.  But it is well-established that "a third party lacks standing to raise a violation of a PSA."  *Benoist v. U.S. Bank N.A.*, 2012 WL 3202180, at *5 (D. Haw. Aug. 3, 2012) (citing numerous cases); *see also, e.g.*, *Viloria v. Premium Capital Funding LLC*, 2012 WL 4361252, at *3 (D. Nev. Sept. 20, 2012) ("Plaintiffs lack standing . . . to enforce or assert claims arising under the trust purchase agreement or Pooling and Servicing Agreement ('PSA') surrounding the 'securitization' of the Note.") (citing additional cases).

agreement or investment trust can relieve borrowers of their obligations to perform under a duly executed promissory note and deed of trust").

Indeed, unless Wells Fargo has not properly performed its duties as a servicer (something that is not clearly alleged), Plaintiffs would be hard-pressed to demonstrate any damages from having made payments to Wells Fargo. *See Sipe v. Countrywide Bank*, 2010 WL 2773253, at *14 (E.D. Cal. July 13, 2010) (rejecting claim that defendant misrepresented it had the right to collect payments on pooled mortgages, reasoning that "Plaintiff agreed to make monthly payments pursuant to the terms of the promissory note and deed of trust when he obtained the loan. . . . Whether or not [defendant] is legally entitled to service Plaintiff's [loan] does not harm Plaintiff in the absence of allegations that Plaintiff was also making loan payments to a third party").

In short, even assuming the Complaint's well-pleaded *factual* allegations are true, the Complaint fails to state a plausible claim that Wells Fargo was or is a "debt collector" such that it could have violated the FDCPA. Count One is dismissed.

**B.     Quiet Title -- Count Two**

Next, incorporating Plaintiffs' theory that termination of the 2009 Freddie Mac Trust also terminated Wells Fargo's servicing rights, Count Two of

the Complaint alleges that:

> Wells Fargo -- without having any interest in the Note or the Mortgage, without having purchased either the Note or the Mortgage, without any servicing rights, and without privity of contract with the mortgagee -- has held itself out as servicer and mortgagee of the Note and the Mortgage and without authority has sent wrongful bills to [Plaintiffs], demanding payment. In doing so, Wells Fargo asserted legal and/or equitable title in the Note, the Mortgage, and on the Subject Property which is unfounded and/or inequitable to enforce.

Doc. No. 1, Compl. ¶ 37. Wells Fargo is therefore allegedly a "claimant to an interest in the Subject Property adverse to that of [Plaintiffs]" and its "defunct claim . . . constitutes a cloud on title." *Id.* ¶ 35. Count Two seeks a declaration that "Wells Fargo has no interest in the Subject Property or in the Mortgage thereon," *id.* ¶ 41a, so that Plaintiffs can "know to which party to make their mortgage payments." *Id.* ¶ 41.

Count Two fails to state a claim for several reasons. First, the claim is based on the proposition -- addressed and discredited above -- that termination of the 2009 Freddie Mac Trust without a reconveyance of the Note and/or Mortgage also necessarily terminated Wells Fargo's servicing rights. As with Count One, Plaintiffs' argument that "[t]hese allegations must be taken as true," Doc. No. 18, Pls.' Opp'n at 7, is inapplicable because the allegations are implausible legal conclusions -- not assertions of fact. *See Iqbal*, 556 U.S. at 678. And if Wells

Fargo remains as a legitimate loan servicer, its "interest in the Subject Property or in the Mortgage thereon," has not changed. Wells Fargo still has a basis (set forth in the terms of the Note) for servicing Plaintiffs' loan.[4]

In any event, Count Two does not allege the necessary elements of a "quiet title" cause of action. Plaintiffs' unspecified claim for "quiet title" appears to be brought under HRS § 669-1(a), which allows an action "by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim." Plaintiffs, however, cite no authority for their argument that the actions servicing their loan (here, sending bills and "demanding payment," Doc. No. 1, Compl. ¶ 37) -- even by an allegedly improper servicer -- constitute "an estate or interest in real property" as necessary to state a claim under HRS § 669-1. Nothing indicates such actions "constitute a cloud on title." Doc. No. 18, Pls.'

---

[4] Plaintiffs' contention that they do not know to whom their debt is owed is not a basis to "quiet title." *See Homeyer v. Bank of Am.*, 2012 WL 4105132, at *6 (D. Idaho Aug. 27, 2012) (rejecting quiet title claim where plaintiffs asserted that they did not know to whom their debt is owed, reasoning that "even assuming some yet unknown entity is the true Note Holder entitled to receive payments, the fact that the entity is unknown is not a cloud on the title") (Findings and Recommendation adopted Sept. 17, 2012). *Homeyer* further explained that "[u]nless and until the Note Holder fails to produce clear title and a warranty deed upon tender, Plaintiffs may not fail to comply on their part with the provisions of the Note requiring payment." *Id.* "As the Ninth Circuit Bankruptcy Appellate Panel recently observed, the borrower (the maker of the note) 'should be indifferent as to who owns or has an interest in the note so long as it does not affect the maker's ability to make payments on the note.'" *Id.* at *7 (quoting *Veal v. Am. Home Mortgaging Serv., Inc. (In re Veal)*, 450 B.R. 897, 912 (9th Cir. BAP 2011)).

Opp'n at 6.[5]  Indeed, caselaw indicates the opposite -- routine loan servicing by itself does not constitute a cloud on title for purposes of a quiet title claim (absent, for example, a servicer asserting a lien or interest in the property).  *See, e.g.*, *Farias v. FCM Corp.*, 2010 WL 4806894, at *2 (S.D. Cal. Nov. 18, 2010) (dismissing quiet title claim for failure to allege the interest claimed by defendant in the property, where the defendant was "the loan servicer with no ownership interest in the property"); *Cortez v. New Century Mortg. Corp.*, 2011 WL 5325524, at *6 (N.D. Cal. Nov. 3, 2011) (dismissing quiet title claim, reasoning that "Plaintiff's conclusory allegation that all Defendants claim an interest in the property adverse to her cannot stand against Saxon, which is merely the loan servicer"); *Manabat v. Sierra Pac. Mortg. Co.*, 2010 WL 2574161, at *17 (E.D. Cal. June 25, 2010) ("Chase, as loan servicer, lack[s] an interest in the property subject to a quiet title claim."); *Boswell v. Bayrock Mortg. Corp.*, 2012 WL 413849, at *7 (M.D. Ala. Jan. 19, 2012) (concluding that plaintiff "fails to allege a plausible claim to quiet title against Real Time Resolutions . . . [which] is the servicer of the home equity loan and does not hold any interest in the foreclosure of the property at issue").

Plaintiffs have thus "not alleged sufficient facts regarding the interests

---

[5]  Again, the Complaint does not allege that Plaintiffs' loan is in default or that Wells Fargo has instituted foreclosure proceedings against the Subject Property.

of various parties to make out a cognizable claim for 'quiet title.'" *Kamakau*, 2012 WL 622169, at *8. Plaintiffs have, at best, merely alleged elements of § 669-1, and thus Count Two fails to state a claim. *See Iqbal*, 556 U.S. at 678 (reiterating that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient).

Further, if Plaintiffs' theory is that Wells Fargo is in fact wrongfully asserting a "cloud on title" by threatening to foreclose -- when Wells Fargo's "ownership interest" (as a former loan servicer) has been terminated -- then Plaintiffs' claim is barred by the "tender rule." They have not alleged that they have paid off the Note or are prepared to tender all amounts owing. That is, such a quiet title claim against a mortgagee (or purported servicer for the mortgagee) requires an allegation that Plaintiffs "ha[ve] paid, or [are] able to tender, the amount of indebtedness." *Kamakau*, 2012 WL 622169, at *9 ("A basic requirement of an action to quiet title is an allegation that plaintiffs are the rightful owners of the property, *i.e.*, that they have satisfied their obligations under the [note and mortgage]") (internal quotations marks and citation omitted). Many cases from this district and elsewhere rely on this rule requiring a plaintiff "to establish his superior title by showing the strength of his title as opposed to merely attacking the title of the defendant." *Amina v. Bank of N.Y. Mellon*, 2012 WL

3283513, at *3 (D. Haw. Aug. 9, 2012) (citing cases).[6]

Count Two is dismissed.

## C.    Fraud, Attempted Conversion and Unjust Enrichment -- Count Three

Count Three alleges that "[t]he actions of Defendant Wells Fargo

constitute fraud against [Plaintiffs], attempted conversion or attempted theft by

false pretenses; and unjust enrichment under the common law," Doc. No. 1,

Compl. ¶ 43, and is based on the assertion that Wells Fargo "has no legal interest

in the Note or the Mortgage that could allow it to collect payments under the Note

and the Mortgage." *Id.* ¶ 44.  The claim is thus grounded on the same theory,

discussed and discredited above, that Wells Fargo "lost authority to act under the

Freddie Mac 2009 Trust, and under the Note or the Mortgage" when the Trust was

---

[6] *Amina v. Bank of New York Mellon*, 2012 WL 3283513 (D. Haw. Aug. 9, 2012),
explained that the tender requirement does not apply "where the borrower brings a quiet title
claim against a party who, according to the allegations in the Complaint (which the court accepts
as true), is not a mortgagee and who otherwise has no interest in the property whatsoever." *Id.* at
*4.  This exception, however, does not apply here, where Plaintiffs are "seek[ing] a declaratory
judgment that [Wells Fargo], who falsely claims to be the servicer despite that the Trust into
which the Note and Mortgage were sold has dissolved[.]" Doc. No. 18, Pls.' Opp'n at 7.
Plaintiffs are asserting that Wells Fargo's status as a servicer for a mortgagee is invalid, and thus
the tender requirement applies. *Id.* at *5 ("To be clear, . . ., this is not a case where Plaintiffs
assert that Defendant's mortgagee status is invalid (for example, because the mortgage loan was
securitized or because Defendant were not hold the note).").  If Plaintiffs' theory is that its title is
superior to that of Wells Fargo's "cloud on title" (a purported right to foreclose), then Plaintiffs
are required to allege an ability to tender the outstanding loan obligation.
    For this reason, it also makes no difference if Count Two is construed as being brought
under common law (as opposed to HRS § 669-1).  Tender is required here "regardless of whether
the claim is based on common law or statute." *Benoist*, 2012 WL 3202180, at *10.

terminated.  *Id.* ¶ 16.  Accordingly, Plaintiffs have not alleged a sufficient factual

basis that Wells Fargo is anything but a proper loan servicer -- the Complaint

acknowledges that Wells Fargo was the servicer upon creation of the 2009 Freddie

Mac Trust, and fails to allege a plausible theory that such status changed.  It

follows that the allegedly fraudulent behavior (*e.g.*, collecting funds without

authority, and "intercept[ing] and pocket[ing] mortgage payments that should have

been paid to the true mortgagees") fails to state a valid claim for fraud.[7]  Wells

Fargo could not have committed fraud by misrepresenting its status as a loan

servicer.  The Complaint fails to state a plausible claim for fraud.

Moreover, it is unlikely that Hawaii law recognizes civil liability for

an "attempted" tort (such as the "attempted conversion" alleged in Count Three).

*Cf. United States v. Stefonek*, 179 F.3d 1030, 1036 (7th Cir. 1999) ("There are no

---

[7]  The fraud claim otherwise fails for lack of particularity.  *See* Fed. R. Civ. P. 9(b)
(requiring a party to state with particularity the circumstances constituting fraud).  This pleading
requirement requires alleging "an account of the time, place, and specific content of the false
representations as well as the identities of the parties to the misrepresentations."  *Swartz. v.
KPMG LLP*, 476 F.3d 757, 764 (9th Cir. 2007).  Here, there are no details as to, for example,
when the 2009 Freddie Mac Trust terminated, what terms of such a termination led to Wells
Fargo losing its servicer status, or which payments (and how many and in what amounts)
Plaintiffs made to this improper servicer.

At one point, Count Three alleges that "Wells Fargo accepted and retained the mortgage
payments without applying them to the balance [Plaintiffs] owed to the true mortgagee."  Doc.
No. 1, Compl. ¶ 45.  But this allegation is made in conjunction with the discredited assertion that
Wells Fargo was "collecting funds from [Plaintiffs] without authority," *id.*, and otherwise lacks
particularity (for purposes of a fraud claim) as to details such as which, or how many, payment
or payments were made and not credited.

'attempted torts.'").  But even if such a civil claim existed, Plaintiffs have not alleged facts sufficient to state a claim for conversion, much less "attempted conversion."  The elements of a conversion claim are "(1) a taking from the owner without his consent; (2) an unwarranted assumption of ownership; (3) an illegal use or abuse of the chattel; and (4) a wrongful detention after demand."  *Pourny v. Maui Police Dep't*, 127 F. Supp. 2d 1129, 1146 (D. Haw. 2000) (citations omitted).  Here -- without Plaintiffs' theory that Wells Fargo lost servicing rights upon termination of the 2009 Freddie Mac Trust -- there are no allegations that mortgage payments were taken without consent.  Nor are there allegations that payments were not returned after demand.  And there are no allegations that Wells Fargo "attempted" to convert Plaintiffs' funds without consent after a demand for repayment from Plaintiffs.  The claim for "attempted conversion" fails.

Similarly, Plaintiffs fail to state a claim for unjust enrichment.  Once again, this claim is based upon the theory that Wells Fargo lost servicing rights because of the termination of the 2009 Freddie Mac Trust.  Without this discredited theory, the allegations of the Complaint are insufficient to suggest a plausible claim for unjust enrichment.  An unjust enrichment claim consists of two elements: "(a) receipt of a benefit without adequate legal basis by Defendant[]; and (b) unjust retention of that benefit at the expense of Plaintiffs."  *Cootey v. Countrywide Home*

*Loans, Inc.*, 2011 WL 2441707, at *12 (D. Haw. June 14, 2011) (citations

omitted). There must also be "an absence of an adequate remedy at law." *Id.*

(citations omitted). Given that there is no basis for Wells Fargo's improper

servicing, the Complaint sets forth no facts indicating what benefits Wells Fargo

received at the expense of Plaintiffs. *Id.* Indeed, under their theory, *Plaintiffs*

would appear to be unjustly enriched by being able to retain loan proceeds without

payment of loan obligations.

The Complaint fails to state a claim for unjust enrichment.

**D.      "Unfair Competition and Practices Statute" -- Count Four**

Count Four alleges that "Wells Fargo's actions in wrongfully

collecting mortgage loan payments from [Plaintiffs] after the Freddie Mac 2009

Trust terminated constitute willful, malicious, and egregious violations of Hawaii's

statute against unfair competition and practices, H.R.S. § 480-2." Doc. No. 1,

Compl. ¶ 51.

Once again, this Count is based entirely on the proposition that

"termination" of a trust of securitized mortgages also necessarily terminates the

loan servicer such that Wells Fargo "had no rights under the Note and the

Mortgage while billing [Plaintiffs]." *Id.* ¶ 52. Because that allegation is

unsupported and implausible, it cannot form the basis of any unfair or deceptive act

or practice under HRS § 480-2.  *See, e.g.*, *Haw. Med. Ass'n v. Haw. Med. Serv. Ass'n, Inc.*, 113 Haw. 77, 113-14, 148 P.3d 1179, 1215-16 (2006) (reiterating the requirements for a claim for a violation of HRS § 480–2 -- (1) an unfair or deceptive trade practice, (2) injury to the plaintiff's business or property resulting from that practice, and (3) actual damages).

Moreover, Count Four's allegations of a Chapter 480 violation sound in fraud.  *See* Doc. No. 1, Compl. ¶ 54 ("Wells Fargo has employed deception, fraud, false pretenses, and misrepresentation. . . .  Wells Fargo has willfully and fraudulently held itself to [Plaintiffs] out as the servicer and/or morgtagee, without any authority to do so.").  Count Four thus fails for the additional reason that it must be pled with particularity.  *See, e.g.*, *Long v. Deutsche Bank Nat'l Trust Co.*, 2011 WL 2650219, at *7 (D. Haw. July 5, 2011) ("[W]here a Chapter 480 claim is based on fraudulent acts, a plaintiff must plead with particularity.") (citations omitted).  Here, as noted above, Plaintiffs do not assert "'particularized allegations of the circumstances *constituting* fraud' such as the time, place, and nature of the alleged fraud, and how each Defendant participated in the fraud."  *Id*. (citations omitted).

In short, Count Four fails to state a claim for a violation of HRS § 480-2.

24

**E.     Violations of Hawaii Collection Agencies Statute -- Count Five**

Lastly, Plaintiffs allege that "Wells Fargo's actions have violated Hawaii's Collection Agencies statute, H.R.S. § 443B, et seq."  Doc. No. 1, Compl. ¶ 57.  This Count fails to state a claim as it is also based upon the discredited theory that "Wells Fargo continues to hold itself out, falsely, as the servicer and/or mortgagee, and continues to demand mortgage payments from [Plaintiffs]."  *Id.* ¶ 59.  Moreover, it also fails under the plain statutory language.

Among other requirements, HRS Ch. 443B requires a "collection agency" to register with the Department of Commerce and Consumer Affairs before it may "collect or attempt to collect any money or any other forms of indebtedness alleged to be due and owing from any person who resides or does business in this State."  HRS § 443B-3.  The chapter provides that "[n]o collection agency shall collect or attempt to collect any money or other forms of indebtedness alleged to be due and owing by means of any threat, coercion, or attempt to coerce," by conduct included in the statute.  HRS § 443B-15.

The statute defines a "collection agency" as

(1) Any person using any name other than the person's own in collecting the person's own claims with the intention of conveying, or which tends to convey the impression that a third party has been employed;
(2) Any person who, in the conduct of the person's business for a fee, regularly repossesses any merchandise

25

or chattels for another; and
(3) Any person who regularly accepts the assignment of claims or money due on accounts or other forms of indebtedness and brings suits upon the assigned claims or money due on accounts or other forms of indebtedness in the person's own name; provided that any suits shall be initiated and prosecuted by an attorney who shall have been appointed by the assignee.

HRS § 443B-1. Most importantly for present purposes, however, the statute specifically excludes banks from this definition of "collection agency:"

"Collection agency" does not include licensed attorneys at law acting within the scope of their profession, licensed real estate brokers, and salespersons residing in this State when engaged in the regular practice of their profession, *nor banks,* trust companies, building and loan associations, savings and loan associations, financial services loan companies, credit unions, companies doing an escrow business, individuals regularly employed on a regular wage or salary in the capacity of credit persons or in other similar capacity for a single employer who is not a collection agency, nor any public officer or any person acting under an order of court.

*Id.* (emphasis added). In this case, the Complaint itself alleges that Wells Fargo is "a national bank chartered under the laws of the United States." Doc. No. 1, Compl. ¶ 10. By the statute's terms, then, Wells Fargo is not a "collection agency" subject to chapter 443B's requirements. (In its Motion to Dismiss, Wells Fargo pointed out this shortcoming of the Complaint, and Plaintiffs failed to respond in their Reply.)

Accordingly, Count Five is dismissed with prejudice.

## F.    Leave to Amend

Plaintiffs request leave to amend if the court dismisses any of the Counts in their Complaint.  Doc. No. 18, Pls.' Opp'n at 11.  Under Federal Rule of Civil Procedure 15(a)(2), courts should give plaintiffs leave to amend their complaint "when justice so requires."  This standard is to be "applied with extreme liberality."  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990).   "In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be 'freely given.'"  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  "In dismissing for failure to state a claim, 'a district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts.'"  *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995) (quoting *Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990)).

Here, although Plaintiffs' theory that Wells Fargo's loan servicing rights were necessarily extinguished upon "termination" of the 2009 Freddie Mac

Trust appears to be implausible, the court cannot say at this initial stage of the pleading that further amendment would be futile. The factual allegations as to details of their theory (such as the terms and meaning of the "termination," the terms of the 2009 Freddie Mac Trust, the details of the type and manner of Plaintiffs' loan payments after such termination, and the specific actions of Wells Fargo in relation to communications from Plaintiffs) are sufficiently vague that Plaintiffs will be given an opportunity to clarify their factual allegations. Accordingly -- with the exception of Count Five -- the dismissal of the Complaint is without prejudice and with leave to amend.

## V.  **CONCLUSION**

Based on the above, the court GRANTS Defendant's Motion to Dismiss. The Complaint is DISMISSED without prejudice (except for Count Five, which is dismissed with prejudice). Plaintiffs may file an Amended Complaint by **October 22, 2012** that attempts to clarify the basis of their claims. This Order limits Plaintiffs to filing an Amended Complaint that attempts to cure the specific deficiencies identified in this Order. That is, this Order does not grant Plaintiffs leave to amend to file an Amended Complaint that asserts any different theories or

///

///

causes of action. If an Amended Complaint is not filed by **October 22, 2012**, the

action will be terminated and the case closed.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, October 4, 2012.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*Klohs et al. v. Wells Fargo Bank, N.A.*, Civ. No. 12-00274 JMS-KSC, Order Granting Defendant Wells Fargo Bank N.A.'s Motion to Dismiss